IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **KEVIN ROSS,** | ) |
| Plaintiff, | ) |
| v. | ) No. _____ |
| | ) **JURY DEMAND** |
| **A4 METOVA HOLDINGS COMPANY, LLC, & JOHN ADAMS,** | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Comes now Kevin Ross ("Ross") by and through undersigned counsel and for his Complaint against A4 Metova Holdings Company, LLC ("A4") and John Adams ("Adams" who together with A4 are referred to herein collectively as "Defendants") avers as follows:

## INTRODUCTION

1. Ross is a well-known and respected technology entrepreneur not only in the Middle Tennessee tech sector, but world-wide as well. Ross has been regularly featured in the *Nashville Business Journal, the Nashville City Paper* and *NashvillePost.com.* He is an angel investor and is often requested to sit on the boards of local tech startups.

2. In 2006, Ross started Metova, Inc. ("Metova") to provide the Blackberry mobile smartphone sector with custom developed applications. In the years that followed, Metova, with Ross at the helm, would expand to create custom applications for Apple's iOS (i.e., iPhone, iPod and iPad) and Google's Android platforms. Metova was wildly successful and quickly grew to 30 highly skilled technical employees and annual revenues in excess of $3,500,000.

1

3. Ross started Metova with $8,000 charged to a credit card, and bootstrapped the operation building a company that made the Inc. 500|5000 in 2011 and 2012. Under Ross' leadership, Metova also earned other objective plaudits: 2012 Nashville Technology Counsel Software Developer of the Year, 2012 NashvillePost Fast 15, 2012 Nashville Business Journal Best in Business, 2012 Nashville Business Journal Forty Under 40, and 2011 NashvillePost Tech 25. See *The New Model – Built on a Shoestring, App Developer Metova Highlights This Year's Fast15*, NASHVILLEPOST, June 2012, attached hereto as Exhibit A.

4. Throughout this rapid growth period Metova remained completely debt-free.

5. Metova's business is the development of custom, specification based, native mobile applications based on customer's orders, stipulations, and time-frames. Metova is a professional services company producing work as directed by a customer on a work for hire basis. Metova develops its applications based on its customer's specifications in the Apple iOS, Google Android, or RIM Blackberry platforms. Metova does not develop, and as of the Settlement Date, as defined below, did not develop, speculative applications for its own account that it would license and place for sale in any market. Metova's clear specialty is mobile. Metova's business is focused on "World Class Mobile Application Development," and is "Completely Focused on Mobile Application Development," more specifically "We develop applications for smartphones and tablets. That's all we do, and we never outsource work." *See* Metova, Inc. | Android, iPhone, Blackberry – Mobile App Development Services, "*World Class Mobile Application Development*," "*Completely Focused on Mobile Application Development*," "*We develop applications for smartphones and tablets. That's all we do, and we never outsource work*," Metova.com, www.metova.com (accessed May 22, 2013) screen captures of which are attached hereto as collective Exhibit B.

2

6. As of the Settlement Date, as set forth below, Metova did not, and upon information and belief, does not develop speculative applications for its own account that it in turn would sell and market to possibly interested customers. Instead, Metova's customers request Metova build a mobile application based on its' specifications.

7. On August 20, 2012 (the "Closing Date"), Defendant Adams, through his special purpose entity, Defendant A4, acquired 85% of the capital stock of Metova from Ross and became a party to Metova's Amended & Restated Shareholder Agreement (the "Shareholder Agreement"), a copy of which is attached hereto as Exhibit C. The transaction between Ross and A4 was memorialized in a Stock Purchase Agreement, a copy of which is attached hereto as Exhibit D (the "Purchase Agreement").

8. On the Closing Date, Ross received $5,500,000 cash consideration, as well as an interest in Metova's accounts receivable at year end, and a "put option," exercisable on the anniversary of the Closing Date. The put option allowed, but did not require, Ross to demand Adams and A4 acquire Ross' remaining 15% interest in the capital stock of Metova, for a purchase price of $1,000,000.

9. Simultaneous with the Closing Date, Ross entered into an Employment Agreement with Metova, a copy of which is attached hereto as Exhibit E (the "Employment Agreement," which together with the Shareholder Agreement, and the Purchase Agreement, are collectively referred to herein as the "Subject Agreements").

10. Section 2(a)(iii) of the Shareholder Agreement required unanimous consent of Adams, A4, and Ross, in order for Metova to incur new or additional indebtedness.

11. On or about the Closing Date, in order to partially fund the acquisition of Metova, Adams caused Metova to incur $2,000,000 of new, prior non-existent, debt (the "Adams

3

Unilateral Debt"). Evidence of the Adams Unilateral Debt is attached hereto as Exhibit F. Adams neither sought nor obtained the consent of Ross to this indebtedness, and as such Adams breached the Shareholder Agreement. Ross' remaining 15% interest in Metova was therefore diminished, and Ross was damaged thus, by at least $300,000.

12. As a result of Adams incurring the Adams Unilateral Debt, and other disagreements about the management of Metova, by Adams insisting he was entitled to "run the business the way I see fit," and his ignorance of his fiduciary duty to a minority shareholder in a closely-held corporation (*See* Email of John Adams dated December 24, 2012 attached hereto as Exhibit G), Ross elected an early and complete separation from Metova.

13. The separation of Ross from Metova was memorialized in a Stock Redemption & Settlement Agreement dated February 5, 2013 (the "Settlement Date"), a copy of which is attached hereto as Exhibit H (the "Settlement Agreement").

14. Amongst other provisions of the Settlement Agreement, A4 and Adams agreed to a broad and general release of Ross:

> Except for the claim for indemnification asserted by A4 against the Redeemed Shareholder as more fully set forth in correspondence dated as of even date, each of the Company, and the Remaining Shareholder (collectively being, for purposes of this Section 4(a), the "Releasor") releases the Redeemed Shareholder and his Affiliates, successors and assigns (each being, for purposes of this Section 4(a), an "Exculpated Party") from any and all Claims against any Exculpated Party which Releasor ever had, now has or hereafter can, shall, or may have for, upon or by reason of (i) any matter, cause, or thing whatsoever from the beginning of the world to the date of this Agreement, including, without limitation, any matter or thing arising from or in connection with the Shareholder Agreement, or any transaction entered into by the Company, and (ii) any matter, cause or thing whatsoever which arises from and after the date of this Agreement, including, without limitation, any matter or thing arising from or in connection with the Shareholder Agreement, or any transaction entered into by the Company.

(the "Release").

15. The only carve-out to this very broad and general release was a claim for indemnification related to an IRS tax audit of Metova for periods preceding the closing of the Purchase Agreement. Even though Ross made no representations or warranties to Defendants regarding tax matters in the Purchase Agreement and could have insisted Defendants were responsible for such pre-closing liabilities, Ross voluntarily agreed to incur any and all expenses associated with resolving the audit and pay any such tax due. The IRS tax audit concluded and Ross paid in excess of $100,000 to resolve the matter on behalf of Metova.

16. Section 19 of the Settlement Agreement provides that with respect to any litigation in connection with the Settlement Agreement, the prevailing party shall recover as an element of damages his reasonable attorney's fees and expenses incurred in such litigation.

17. Because Ross wished for total and complete separation from Metova due to A4 and Adams, Ross agreed to accept $100,000 less than he would have otherwise been entitled had he made demand pursuant to the put option on the anniversary of the Purchase Agreement (approximately 9-months later).

18. As a result of the Settlement Agreement and the Release, Ross was relieved of any obligation, requirement or responsibility to Metova, A4 or Adams, including, without limitation, any obligations or other requirements set forth in the Subject Agreements, whether then existing or thereafter accruing.

19. In addition to paying Ross $900,000 to redeem his remaining 15% interest in Metova, in Section 2(c) of the Settlement Agreement, Defendants also agreed to pay Ross up to $5,000 of his attorney's fees incurred in connection with their breach of the Amended & Restated Shareholder Agreement and negotiating and preparing the Settlement Agreement. As of the filing of this matter Defendants have failed to pay this amount despite timely demand

being made. *See* Email of Jeffrey J. Miller, Esq. dated March 29, 2013 attached hereto as Exhibit I.

20. On or about April 1, 2013, Ross initiated a new entrepreneurial venture involving a world-wide web based software as a service ("SaaS"), even though Ross had incorporated the entity, "AlienFast, Inc.," 2-years prior.

21. AlienFast is intended to be the parent of several subsidiaries that develop and market business management software to what Ross believes are underserved markets. AlienFast's development will be server based and coded using HTML5 markup. At the time of this complaint, AlienFast has neither expressed nor has plans to build native mobile applications.

22. Indeed, as of the filing of this action, neither Ross nor AlienFast has developed its first application, or sold any customer.

23. Moreover, Ross continues to be contacted independent of Metova regarding custom mobile application development opportunities, and because neither Ross nor AlienFast engages in that market, Ross continues to refer these prospective customers to Metova. *See* Email Thread of Abdul Hodge dated Jan. 6, 2013; Email Thread of Michael Metcalf dated Feb. 17, 2013; Email Thread of Kevin Ross dated Mar. 14, 2013; Email Thread of Eddie Murray dated May 24, 2013 attached hereto as collective Exhibit J. It should go without saying, but were Ross actually competing with Metova he would not be referring these opportunities to Metova, but, instead, would appropriate them for his own account.

24. On April 23, 2013, A4, Adams and Metova initiated a cause of action in the Baxter County, Arkansas Circuit Court (the "Arkansas Lawsuit") styled Metova, Inc. and A4 Metova Holding Company, LLC vs. Kevin Ross, No. CIV 2013-72-3, against Ross claiming violations of non-competition and non-solicitation covenants set forth in the Employment

Agreement and Purchase Agreement, even though they had relieved Ross of any such obligations as a result of the Release set forth in the Settlement Agreement. A copy of the complaint in the Arkansas Lawsuit is attached hereto as Exhibit K.

25. Notwithstanding that AlienFast and Ross do not compete with Metova and that Ross is not bound by any covenant not to solicit present or former Metova employees, A4 and Adams in the Arkansas Litigation seek return of the entire consideration paid to Ross, a sum approaching $7,000,000.

26. Ross has incurred, and shall continue to incur, damages, including but not limited to, attorney's fees and costs of litigation (which are expressly agreed as an element of damages for enforcement of the Settlement Agreement) defending the Arkansas Lawsuit.

27. Potential partners and investors in Ross's AlienFast venture have declined to proceed or invest as a result of the Arkansas Lawsuit, further injuring Ross.

28. Ross' damages in this regard exceed, or will exceed, the jurisdictional amount of $75,000 set forth in 28 U.S.C. § 1332(a).

## JURISDICTION

29. Ross is a long-time resident of the State of Tennessee, presently residing on First Street South in Franklin, Tennessee.

30. A4 is an Arkansas limited liability company with its principle place of business located in Mountain Home, Arkansas.

31. Adams is, upon information and belief, a longtime resident of the State of Arkansas, presently residing in Cabot, Arkansas.

32. As a result this court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

33. Moreover, because Ross also requests the Court declare the rights and legal relations between these parties via-a-vie several agreements between them, this Court has jurisdiction pursuant to the federal DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201.

34. In Section 17 of the Settlement Agreement the parties expressly submitted to the exclusive personal jurisdiction of this Court.

35. In order to manage Metova, Adams regularly travels via chartered, private aircraft to the Middle District, and shall be personally served with process while present in the Middle District, thus subjecting himself, and A4, to the personal jurisdiction of the Court.

36. A4 has not qualified to transact business in the State of Tennessee, however, its Arkansas registered agent for service of process is Adams, who has agreed to accept service of process at his residence: 12 Greystone Blvd., Cabot, AR 72023.

## **COUNT 1 – DECLARATORY JUDGMENT**

37. Ross incorporates each and every of the preceding allegations herein as if completely restated.

38. The Settlement Agreement and Release relieved Ross of any past, present or future obligation, responsibility, or account to A4 or Adams, including any covenant not to compete or employee non-solicitation covenant whether expressed in the Shareholder Agreement, Purchase Agreement, or Employment Agreement.

39. As a result, the Court should declare that plaintiff's Arkansas Litigation is in direct contravention and violates the Settlement Agreement and Release.

40. The Court should order Defendants dismiss the Arkansas Litigation, with prejudice.

## COUNT 2 – BREACH OF CONTRACT

41. Ross incorporates each and every of the preceding allegations herein as if completed restated.

42. Adams', and A4's Arkansas Lawsuit is in direct contravention with the Settlement Agreement and Release, and, as a result, is a breach of the Settlement Agreement and Release.

43. Ross has been, and continues to be, damaged by the Arkansas Litigation, including, but not limited to, incurring unnecessary legal expenses, and clouds on Ross's skill, and reputation, such upon knowledge of the Arkansas Litigation possible partners and/or investors have either reneged or declined to affiliate with Ross, all to his detriment, cost, and damage.

44. A4 and Adams should be ordered to pay Ross money damages to remedy this breach of the Settlement Agreement in an amount to be determined by the jury following trial.

## COUNT 3 – BREACH OF CONTRACT

45. Ross incorporates each and every of the preceding allegations herein as if completely restated.

46. In Section 2(c) of the Settlement Agreement, Defendants agreed to pay Ross up to $5,000 of his attorneys fees incurred in connection with Defendants' breach of the Shareholder Agreement (e.g., causing Metova to incur $2,000,000 in debt in order for Adams to acquire, at least partially, his interest in Metova from Ross), and the negotiation and preparation of the Settlement Agreement.

47. As of the filing of this action, Defendants have failed and refused to pay such sum to either Ross or his counsel despite demand being made, and therefore have further breached the Settlement Agreement.

9
Case 3:13-cv-00544   Document 1   Filed 06/05/13   Page 9 of 10 PageID #: 9

48. A4 and Adams should be ordered to pay Ross the $5,000 they agreed to incur as part of the consideration for the Settlement Agreement.

**WHERETOFORE**, Plaintiff Ross prays that the Court:

A. Enter a declaratory judgment that the Arkansas Litigation is in contravention and a breach of the Settlement Agreement and Release.

B. Enter a judgment that Adams and A4 have breached the Settlement Agreement and Release.

C. Enter a judgment in favor of Ross for money damages in an amount to be proved at trial against Adams and A4, jointly and severally.

D. Order Adams and A4 dismiss, with prejudice, the Arkansas Litigation.

E. A jury of appropriate number to try the case.

F. Such other general or equitable relief that the Court finds just and proper.

Respectfully Submitted,

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.

s/ Jeffrey J. Miller
Jeffrey J. Miller (BPR No. 017122)
333 Commerce Street, Suite 1500
Nashville, TN 37201
Telephone: 615-256-0500
Facsimile: 615-251-1059
Email: jjm@h3gm.com

10
Case 3:13-cv-00544   Document 1   Filed 06/05/13   Page 10 of 10 PageID #: 10